UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MOKLECHUR RAHMAN,

                Plaintiff,

    -against-

MERRICK GARLAND, UR MENDOZA JADDOU,
SUSAN QUINTANA, and ALEJANDRO MAYORKAS,

                Defendants.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-02650 (OEM)

ORELIA E. MERCHANT, United States District Judge:

        On April 9, 2024, Petitioner Moklechur Rahman ("Rahman") commenced this immigration action against defendants Merrick Garland, former Attorney General of the United States; Alejandro Mayorkas, the U.S. Secretary of Department of Homeland Security, Ur Mendoza Jaddou, Director of U.S. Citizenship and Immigration Services ("USCIS"), and Susan Quintana, Director of the New York Field Office of USCIS ("Defendants") in their official capacities. *See* Petition ("Pet."), ECF 1. Rahman seeks *de novo* review of the USCIS' denial of his application for naturalization and requests a hearing under Section 310(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1421(c). *Id.* Further, he requests that USCIS' denial of his application be set aside because the decision was arbitrary and capricious, contrary to law, and in excess of authority under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). *Id.*

        Defendants filed a motion to dismiss the petition under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state

1

claims on which relief can be granted. Before the Court is the fully briefed motion to dismiss.[1] For the following reasons, Defendants' motion to dismiss is granted.

## BACKGROUND

Rahman is a citizen of Bangladesh. Pet. ¶ 13. His father, a Lawful Permanent Resident ("LPR") of the United States, filed an I-130 Petition for Alien Relative to come to the United States on Rahman's behalf. Pet. ¶ 13. On March 2, 2006, that petition was approved, and Rahman was issued a F22 immigrant classification at the American embassy in Dhaka as an unmarried child of an LPR.[2] Pet. ¶ 13; Form N-400 Denial Decision ("N-400 Denial"), Ex. B to Pet., ECF 1-4 at 2. On March 12, 2006, Rahman married his wife. Pet. ¶¶ 13, 16; Marriage Certificate, Ex. E to Pet., ECF 1-7 at 1. Six days later, on March 18, 2006, Rahman entered the United States using the F22 immigrant visa as an unmarried child of an LPR. Pet. ¶ 13.

Rahman alleges that upon his arrival in the United States in March 2006, he "had little to no understanding of English." Pet. ¶ 16. Rahman further alleges that even "though at the point his I-130 petition was filed and his immigration visa was issued, he was unmarried," the government "ought to have [] guided [him] on his marital status being that he was of marriageable age" at the time of his entry. Pet. ¶ 16.

On August 2, 2018, after living in the United States for 12 years, Rahman applied for naturalization with the USCIS by submitting a Form N-400 Application for Naturalization. Pet. ¶ 14. He was first interviewed on May 8, 2019, and again on July 22, 2019. Pet. ¶ 14; N-400 Denial Decision ("N-400 Denial"), Ex. B to Pet., ECF 1-4 at 2. The USCIS denied his application because

---

[1] Defendants' Memorandum of Law In Support of Motion to Dismiss (Defs.' Mem."), ECF 17-1; Plaintiff's Response in Opposition ("Pl.'s Opp."), ECF 18; Defendants' Reply ("Defs.' Reply"), ECF 19.
[2] The Immigration Nationality Act (INA) allows Lawful Permanent Residents (LPRs) to obtain immigration visas for family members within certain "family preference" categories. Unmarried children of LPRs fall within these categorical limitations. *See Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 47 (2014) (citing 8 U.S.C. §§ 1151(a)(1), 1153(a)(1)-(4)).

2

"[he] ha[d] not demonstrated [his] ability to pass the educational requirements for naturalization." N-400 Denial at 2. The USCIS explained that both of Rahman's interviews for naturalization were cut short because Rahman was "unable to understand and respond to the questions" on his naturalization application "even after the [Immigration Services] Officer repeated and rephrased the questions." *Id.* The USCIS also determined that Rahman was not lawfully admitted for permanent residence in the United States because he married his spouse before his admission at the United States. Pet. ¶ 14; N-400 Denial at 2. The agency explained that Rahman was issued a F22 visa that classified him as the unmarried child of an LPR based on the underlying approved Form I-130 petition filed by his father; that Rahman stated in his second interview that he married his current spouse on March 12, 2006; and that he entered the United States for the first time under the F22 visa as a lawful permanent resident on March 18, 2006. N-400 Denial at 2. Based on these facts, the USCIS determined that because Rahman was married before his entry into the United States "[he] became ineligible for the immigration visa under F22 classification" and "[he] w[as] statutorily ineligible for the permanent residency in the U.S. at the time of entry into the U.S." *Id.* at 2. The USCIS concluded that Rahman did not demonstrate that he met all the requirements in order to qualify for naturalization, "including the requirement of having been lawfully admitted for permanent residence." *Id.* at 2.

Rahman alleges that at the time of his interviews, he "believed he was lawfully admitted for permanent residence as he was never informed by the government as expected that an [i]mmigrant with his status ought not be married prior to being admitted" and that he was

3

"therefore surprised his lawful admission was questioned by the decision of USCIS for being married before entry into the United States." Pet. ¶ 23.

On August 23, 2023, Rahman filed Form N-336, requesting a hearing to review the decision made with respect to his Form N-400 application. Pet. ¶ 15; N-336 Application, Ex. C to Pet., ECF 1-5 at 8. The USCIS "vacate[d] the original denial of [Rahman's] Form-400, but continue[d] to deny [his] N-400, Application for Naturalization." N-336 Denial Decision ("N-336 Denial"), Ex. D to Pet., ECF 1-6 at 2. The USCIS explained that at the hearing, Rahman was able "to respond to the questions" and therefore "achieve[d] a passing score on the English speaking and understanding portions of the naturalization test." *Id.* The USCIS nonetheless determined that he was ineligible for naturalization because he was not lawfully admitted for permanent residence as he was "married prior to [his] entry into the U.S." *Id.*

Rahman alleges that he faced "complexities and challenges" in seeking naturalization. Pet. ¶ 20. He alleges that the government breached a mandatory administrative duty by failing to disclose "relevant" and "fundamental" information regarding his application for naturalization. Pet. ¶ 17. Rahman further states that he has demonstrated his eligibility for naturalization because of his "good moral character" and states that he would never misrepresent or conceal a fact "willfully or knowingly." Pet. ¶ 20. Rahman states that he "possesses a valid Green Card obtained in 2006, demonstrating his lawful permanent resident status for over 15 years . . . ." Pet. ¶ 26.

As relief, Rahman requests that the Court conduct a hearing *de novo* on his naturalization application, grant his naturalization application and order Defendants to grant him citizenship, hold

unlawful and set aside Defendants' denial of his application for naturalization, and grant any other relief that the Court may deem appropriate. Pet. at 8.

## PROCEDURAL HISTORY

Rahman commenced this action on April 9, 2024. On October 1, 2024, the Court held a conference on Defendants' request for pre-motion conference on their anticipated motion to dismiss the Petition and subsequently set a briefing schedule. Minute Entry dated October 1, 2024. Defendant's fully-briefed motion to dismiss the Petition was filed on February 18, 2025.

## LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction must establish by a preponderance of the evidence that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In evaluating a Rule 12(b)(1) motion to dismiss, a district judge must "accept[ ] all material factual allegations in the complaint as true," but should "refrain from drawing inferences in favor of the party asserting subject matter jurisdiction." *Gonzalez v. Inn on the Hudson LLC*, 20-CV-9196 (EJ), 2022 WL 974384, at * 2 (S.D.N.Y. Mar. 30, 2022). Further, a district judge "may consider evidence outside of the pleadings to resolve the disputed jurisdictional fact issues." *Id.*

A motion to dismiss on jurisdictional grounds "may be either 'facial,' i.e., based solely on the allegations of the complaint and exhibits attached to it, 'or fact-based,' i.e., based on evidence beyond the pleadings." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (citation omitted). Facial attacks challenge the sufficiency of the pleading and, like a motion under Rule

12(b)(6), require the court to accept all factual allegations in the complaint as true. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and from the exhibits attached thereto."). Unlike a facial attack, a factual attack places the "jurisdictional facts [ ] in dispute[,]" *Harty*, 28 F.4th at 441, by "proffering evidence beyond the [p]leading[s][.]" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, at 158 (E.D.N.Y. 2022). In resolving factual attacks on jurisdiction, the court "has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

**B.      Federal Rule of Civil Procedure 12(b)(6) Standard**

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff. *Rothstein v. UBS*

*AG*, 708 F.3d 82, 94 (2d Cir. 2013).  When considering a Rule 12(b)(6) motion, the court must "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006).

Under Rule 8, a plaintiff need only provide a short, plain statement of their claim against the defendants, so the defendants have adequate notice of the claims against them.  *See* Fed. R. Civ. P. 8.  To satisfy this standard, the complaint must, at a minimum "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (citation omitted).

## DISCUSSION

Rahman asserts two causes of action: (1) a Section 1421(c) claim requesting *de novo* review of the denial of his naturalization application, and (2) an APA Section 706(2) claim that the agency's denial of his application was arbitrary and capricious, contrary to law, and in excess of authority.  *See generally* Pet.  Defendants seek dismissal of both causes of action.

**A.     Section 1421(c) Naturalization Claim**

Under 8 U.S.C § 1421(c) of the Immigration Nationality Act (INA), a person whose application for naturalization has been denied by USCIS and then upheld on administrative appeal, "may seek review of such denial before the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c).  That statutory provision further provides that "[s]uch review shall be de novo, and the court shall make its own findings of fact and conclusions of law

7

and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Id.*; *accord Chan v. Gantner*, 464 F.3d 289, 295 (2d Cir. 2006).

However, the Federal Rules of Civil Procedure "apply to proceedings for admission to citizenship," Fed. R. Civ. P. 81(a)(3), and therefore "a court need not conduct an evidentiary hearing" in cases where "there are no disputed issues of material fact." *Del Orbe v. Holder*, 12-CV-1057, 2012 WL 3826182, at *2 (S.D.N.Y. Aug. 27, 2012) (finding that motion for judgment on the pleadings, which "is governed by the same standard as a motion to dismiss under Rule 12(b)(6)," was appropriate procedural due process); *see Li v. Garland*, 21-CV-10601 (LJL), 2022 WL 17095250, *7 (S.D.N.Y. Nov. 21, 2022); *Shtykova v. Holder*, 10-CV-4999 (SJF), 2012 WL 1004906, at *4 (E.D.N.Y. Mar. 22, 2012) (granting motion to dismiss 8 U.S.C. § 1421(c) claim because the "undisputed facts" established plaintiff was not entitled to citizenship); *cf. Chan*, 464 F.3d at 295-96 (holding that Federal Rules govern review of naturalization review; "mere use of the word 'hearing' in a statute does not mandate an evidentiary hearing be held"; "[d]istrict [c]ourt properly entered summary judgment to dispose of the case" "[b]ecause there was no genuine issue of material fact").

Defendants argue that Rahman's Section 1421(c) claim must be dismissed, because Rahman was not lawfully admitted to the United States for permanent residence as he was married at the time of his admission to the United States. Defs.' Mem. at 11. Defendants argue that Rahman is "statutorily ineligible to naturalize" because he failed to comply with the substantive legal requirements of his F-22 immigrant visa. *Id.*

### 1. Rahman Was Not Lawfully Admitted

Applicants for citizenship through naturalization must strictly comply with all requirements and have the burden to show their eligibility for citizenship "in every respect." *I.N.S.*

8

*v. Pangilinan*, 486 U.S. 875, 886 (1988); *Fedorenko v. United States*, 449 U.S. 490, 506 (1981). One of the statutory prerequisites for naturalization requires that a person seeking to become a United States citizen must establish that he has been "lawfully admitted for permanent residence, within the United States for at least five years." 8 U.S.C. § 1427(a); *see id.* § 1429 ("[N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter."). According to the INA, the "[t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws . . . ." 8 U.S.C. § 1101(a)(20); 8 C.F.R. § 316.2(b) (providing that the applicant must establish that he was "lawfully admitted as a permanent resident to the United States, in accordance with the immigration laws in effect at the time of the applicant's initial entry or any subsequent reentry"). The Second Circuit has held that "[t]he natural reading of 'lawful' connotes more than just procedural regularity; it suggests that the substance of an action complied with the governing law." *De La Rosa v. U.S. Dep't of Homeland Sec.*, 489 F.3d 551, 554 (2d Cir. 2007).

Here, Rahman does not dispute that he was unmarried at the time that he was granted a F22 immigrant visa, that when he arrived in the United States, he was admitted as the unmarried child of a LPR, and that six days before his arrival, he got married in his native country of Bangladesh. *See* Pet. ¶¶ 16-17. As noted above, the F22 immigrant visa is intended for unmarried daughters and sons of an LPR and requires that those granted such visas remain unmarried when applying for admittance into the United States. 8 U.S.C. § 1153(a)(2). The INA defines "[t]he term 'unmarried', when used in reference to any individual as of any time, [to] mean[ ] an individual who at such time is not married, whether or not previously married." 8 U.S.C. § 1101(a)(39).

9

Simply put, a visa for an unmarried son or daughter of LPR is valid only if the visa holder is "unmarried" at the time he or she presents for admission at a U.S. port of entry. *Cf.* 22 C.F.R. § 42.72(d). "[I]f 'at the time of application for admission, the applicant does not have a 'valid' visa, the applicant is inadmissible." *Aphu v. Garland*, 2024 WL 3584199, at *3 (W.D.N.Y. July 30, 2024) (quoting 8 U.S.C. § 1182(a)(7)(A)(i)). Therefore, when Rahman applied for admission into the United States at a U.S. port of entry, he was not eligible to be admitted under the F22 immigrant visa that was issued to him at the U.S. embassy in Dahka, because he was no longer an unmarried son of a LPR. *See Aphu*, 2024 WL 3584199, at *4 (noting that "several courts have held that when a married person enters the country with a visa for an unmarried person, he or she did not comply with the substantive legal requirements for admission and therefore has not been lawfully admitted") (collecting cases); *id.* (finding that petitioner who was issued a visa for unmarried child of a United States citizen was not lawfully admitted because he got married four days before his arrival in the United States).

Rahman nonetheless states in his petition that he "believed [that] he was lawfully admitted for permanent residence as he was never informed by the government as expected that an [i]mmigrant with his status ought not to be married prior to being admitted as a lawful permanent resident . . . ." Pet. ¶ 23. He further states that the government had a duty to inform him that he should have remained single and unmarried and the government's failure to disclose that information was error. *See id.* ¶¶ 16-18. However, the fact that Rahman mistakenly believed that he was lawfully admissible does not negate or override the substantive legal requirements for obtaining lawful permanent resident status. *Villafana v. Holder*, 358 App'x 245, 246 (2d Cir. 2009) (holding that those who obtained their LPR status by mistake and did not comply with the relevant substantive legal requirements for LPR status were never "lawfully admitted for

10

permanent residence"); *Aphu*, 2024 WL 3584199, at *3 ("If a noncitizen fails to comply with all substantive legal requirements when he or she is admitted to the United States for permanent residence, then he or she is deemed never to have obtained lawful permanent resident status. That applies even if the noncitizen mistakenly believed that he or she was admissible"). To the extent Rahman also relies on the fact that the government mistakenly adjusted his status to lawful permanent resident under a category designated for unmarried children, "such adjustment in status was not in accordance with the immigration law" and therefore Rahman was not "lawfully admitted for permanent residence" as required to establish eligibility for naturalization. *Shtykova*, 2012 WL 1004906, at *4 (in context of government's mistaken admission of a person who had a visa for an unmarried daughter but was married); *Daniel v. Dist. Dir.*, 2015 WL 1097375, at *9-10 (S.D.N.Y Mar. 12, 2015). Thus, the government's apparent error in mistakenly admitting an otherwise inadmissible person does not make that admission lawful. *Shtykova*, 2012 WL 1004906, at *4. A person who became a lawful permanent resident despite being "inadmissible" has not been "lawfully admitted for permanent residence" for purposes of naturalization. *See Saliba v. Att'y Gen. of U.S.*, 828 F.3d 182, 196 (3d Cir. 2016). Because Rahman failed to comply with the substantive requirements for obtaining lawful permanent resident status, Rahman is statutorily ineligible for naturalization on that basis.

### 2. The Court's Equitable Powers Are Unavailable in Naturalization Cases

Rahman further argues that the Court should "equitably estop the finding that [he] was unlawfully admitted" to "[c]orrect the '[u]nintentional [i]njustices" to Rahman, "even if [the Court] may not approve citizenship directly on equitable grounds." Pl.'s Opp. at 3, 5. This is a slightly different relief requested from the petition — that the Court grant his application for naturalization or order Defendants to do so. In support of his equitable estoppel claim, Rahman

11

argues that a State Department officer issuing his immigrant visa failed to warn him as mandated by State Department regulations that his visa would be invalid if he married before arriving to the United States. Pl.'s Opp. at 2, 3-5 (citing to 22 C.F.R. § 42.72(d), which provides that consular office must warn a person issued a visa as an unmarried daughter or son of a citizen that she or he "will be admissible as such an immigrant only if unmarried at the time of application for admission at a U.S. port of entry"). Because of the lack of warning, Plaintiff argues, the "seemingly-inconsequential decision [to marry before his arrival to the United States] now threatens his citizenship." Pl.'s Opp. at 2.

The cases[3] that Plaintiff relies on where federal courts have exercised their equitable powers to grant some form of equitable remedy concern other areas of immigration law such as removal proceedings and not naturalization. The Supreme Court precedent precludes the availability of equitable estoppel where the statutory requirements for naturalization are not met. *Pangilinan*, 486 U.S. at 875; *see Keane v. Velarde*, 21-CV-8257 (LJL), 2022 WL 3577841, at *9 (S.D.N.Y. Aug. 19, 2022), *aff'd sub nom. Keane v. Dibbins*, 22-2833-CV, 2023 WL 6785370 (2d Cir. Oct. 13, 2023).

In *Pangilinan*, the Supreme Court considered whether a court could order naturalization as an equitable remedy when an individual does not have a statutory right to citizenship. *Pangilinan*, 486 U.S. at 882-83. The Supreme Court answered no, holding that "the power to make someone a citizen of the United States has not been conferred upon the federal courts . . . as one of their generally applicable equitable powers," but "[r]ather, it has been given to them as a specific function to be performed in strict compliance" with the terms established by Congress. *Id.* at 883-84. "Once it has been determined that a person does not qualify for citizenship, . . . the

---

[3] *Schwebel v. Crandall*, 967 F.3d 96, 103 (2d Cir. 2020); *Corneil-Rodriguez v. INS*, 532 F.2d 301, 306-07 (2d Cir. 1976).

12

district court has no discretion to ignore the defect and grant citizenship." *Id.* at 884 (quoting *Fedorenko*, 449 U.S. at 517). Thus, "[n]either by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of [statutory] limitations." *Pangilinan*, 486 U.S. at 885. Applying *Pangilinan*, the Second Circuit has held that federal courts are barred from exercising their equitable powers to naturalize citizens or achieve just results even where the equities overwhelmingly favor the noncitizen. *See, e.g., Hizam v. Kerry*, 747 F.3d 102, 111 (2d Cir. 2014).

Here, Sections 1427 and 1429 of the INA, which govern in part the naturalization process, require that a person applying for naturalization must have been lawfully admitted for permanent residence into the United States. 8 U.S.C. §§ 1427, 1429. Rahman does not dispute that he does not meet that precondition to naturalization; he does not have a statutory right to citizenship. Thus, the Court cannot use its equitable powers to ignore that defect in the context of his application for naturalization.

Although Rahman has advanced a slightly different argument—that the Court equitably estop the finding that he was unlawfully admitted even if the Court stops short of approving his citizenship on equitable grounds—this is a distinction without difference. As Rahman concedes in his petition and opposition papers, the determination of whether he is lawfully admitted is a barrier to his naturalization. Thus, if the Court were to estop the government from finding that he was unlawfully admitted, this would resolve one of the barriers to his naturalization. But, the "rule and the spirit of *Pangilinan* cannot be so easily avoided." *Chavarria-Calix v. Att'y Gen. of U.S.*, 510 F. App'x 130, 134 (3d Cir. 2013) (denying request to "recognize an appropriate effective date for [petitioner's] mother's naturalization" as equitable relief because, as the "only remaining hurdle to citizenship," that would automatically confer derivative citizenship); *Ekubov v. U.S.*

13

*Dep't of Homeland Sec.*, C20-1104-TL-SKV, 2022 WL 2490733, at *1 (W.D. Wash. June 7, 2022) (denying petitioner's request that the court grant *nunc pro tunc* relief to find him lawfully admitted for permanent residence thereby finding him eligible for naturalization), *report and recommendation adopted*, 2:20-CV-01104-TL, 2022 WL 2479122 (W.D. Wash. July 6, 2022).

### 3. Alternative Paths to Citizenship

As Defendants noted in their papers, certain avenues may be available to Rahman to obtain citizenship through naturalization, e.g. several members of Rahman's family "are U.S. citizens" and Rahman "could explore whether one of these familial relationships may serve as a path to naturalization for him." Defs.' Mem. at 16 n.7. Further, the Court does not reach the merits of Rahman's equitable relief arguments – that State Department officials' failure to warn him about the consequences of marrying before his arrival to the United States may constitute an affirmative conduct warranting equitable relief to correct an unintentional injustice. Rahman may pursue such claim in the context of USCIS' denial of his application for adjustment of status to lawful permanent resident. *See Schewbel*, 967 F.3d.

### B. APA Section 706(2) Claim

Plaintiff also seeks *de novo* review of his naturalization application pursuant to the APA on the basis that USCIS's denial of his naturalization application was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," alleging lack of proper guidance during the application process and that the decision failed to consider his compliance with immigration laws and familial relationships. Pet. ¶¶ 31-34. Defendants seek to dismiss that claim as duplicative of Plaintiff's Section 1421(c) claim because both claims rely on identical facts and seek the Court's *de novo* review of Plaintiff's naturalization application. Defs.' Mem. at 16.

Defendants also argue that the APA claim fails because Rahman has an adequate alternative remedy – the Section 1421(c) claim. *Id.*

"Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Courts have recognized that § 1421(c) is the "sole means of seeking judicial review of the actual denial of naturalization application." *Kaibanda v. U.S. Citizenship & Immigr. Serv.*, 2022 WL 2195345, at *8 n.8 (S.D.N.Y. June 17, 2022) (citing *Miriyeva v. USCIS*, 436 F. Supp. 3d 170, 178 n.11 (D.D.C. 2019), *aff'd*, 9 F.4th 935 (D.C. Cir. 2021)). The APA provides for review of final agency action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Here, Rahman has an opportunity for adequate relief under § 1421(c). *See Saleh v. Jaddou*, 2023 WL 5671149, at *9 (S.D.N.Y. Sept. 1, 2023); *Li*, 2022 WL 17095250, at *14. The Court therefore lacks subject-matter jurisdiction to hear Rahman's APA claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted, and the petition is dismissed. The Clerk of Court is respectfully directed to enter judgment and close this action.

**SO ORDERED.**

/s/
ORELIA E. MERCHANT
United States District Judge

July 14, 2025
Brooklyn, New York